The next case is Hodges v. United States and we'll give counsel just a moment to clear the tables. Okay. All right, we'll hear first from Mr. Montero. Good morning. Good morning. May it please the court. My name is Hiram Montero and I am presenting an argument on behalf of all the appellants in this case. The district court clearly heard in its conclusions of law on the issues of duty, breach of duty, and proximate clause. And the court should reverse the district court's final judgment and either come to a final judgment in the appellant's favor or remand for further proceeding in the district court. As to the first point, the district court's decision does not state separately what its conclusion of law is with regard to the air traffic controller's duty in the case, except for one statement that we find in the transcript at page 8, lines 8 to 11. And it reads, both aircrafts were operating outside the power's airspace. Therefore, the air traffic controllers had no general duty to monitor the Seneca and the inbound sector. That, we submit, is an erroneous statement on the controlling law on duty, contrary to Florida law as set forth in the cases of Daly, Aberyst, Hill, and Zinn. And the decisions they cite on the air traffic controller's duties. In reading those cases, we find that the detrimental effect of duty of care which air traffic controllers owe pilots and their passengers is a question of law and freely reviewable on appeal. In Aberyst, the duties of air traffic controllers set forth in Order 71-1065 are evidence of the standard of care. But those duties are supplemented by the general duty of care owed under the circumstances. In Gill, air traffic controllers may be liable under the Federal Code Claims Act for negligent provision of services upon which the public has come to rely. What do we do? I mean, you don't have a lot of time, so I just want to kind of skip. So one question for you is, the way I understand your arguments, the way they break down, is that we need to rule in favor of you on duty and on proximate cause for us to remand, right? Am I right about that? That's correct. On duty, what do you say about the fact that this accident occurred outside, I believe it's Class D airspace? Well, you have to read the rules, sir, and you have to read the rules specifically. Let's start with the basic rule in air traffic control. The basic rule in air traffic control is that the purpose of the rule, 1-1-1, controllers are required to exercise their best judgment if they encounter situations that are not covered by it. And then we go to 2-1-1. The primary purpose of the air traffic control system is to prevent a collision between aircraft. And duty priority, 2-1-2. Good judgment must be used in prioritizing all other provisions of this order based on the requirements of the situation at hand. And importantly, in the notes section, that action, which is most critical from a safety standpoint, is performed first. And we have to understand, sir, that this particular airport, Tamiami Airport, is really an extension of the classroom for that airport. But even so, wasn't she flying with visual flight rules without following? I'm sorry? Wasn't she flying with visual flight rules without following? Yes, she was. And so being outside of the airspace of Class D, and this particular controller had other responsibilities, his primary responsibility to be watching the runways and scanning the runways for incoming and outgoing flights. I mean, where was he, what was his duty there as far as aircraft that had exited the flight space? First of all, to answer your first question about flight following, everyone knew, all the air traffic controllers knew at that airport, that it was normally aviation aircraft student pilots would not be flying with flight following. Why not? Because once they were headed to the northwest or southwest of the airport, once they crossed that five-mile ring, they were concerned with aircraft, student aircraft, coming back from the northwest and the southwest. So it was normally known by all air traffic controllers that no one was going to be on flight following, and that they were dependent on the air traffic controllers to let them know through traffic advisories and safety alerts of incoming aircrafts from the northwest and southwest. Wasn't that the whole purpose of flight following for pilots to be alerted when there are issues of this type, and the pilot here chose not to be on flight following? It's not a question of the pilot not choosing to be on flight following. That was just not the custom and practice to use flight following. For what reason would they use flight following? If she was going from Tamiami to Sarasota, from Tamiami to Fort Myers, or to Naples, yes, it would make sense for her to fly VFR flight following. But in this case, she's going to what? To a training and practice area northwest of the airport, or other aircraft are going to the southwest training and practice areas. That's just on the other side of the 15-mile ring. They would not be on flight following. I'm not an expert in this, so that's why I'm asking you these questions. It seems to me that if the purpose of flight following is to give you extra assurance against having a midair crash, then it seems irrelevant whether she was going to Sarasota or just flying around the area and coming back down again. But I could be missing something, so I'm asking you about it. You're absolutely right. If she was going to other parts of the state, it would make sense. Why wouldn't it make sense for her to be on flight following going to a practice area? Because that wasn't the custom and practice there, and the air traffic controllers knew it. At that airport, every month, they had mandatory meetings between the students and the air traffic controllers. That was mandatory. It was well known to the air traffic controllers that the student pilots that generated the majority of the traffic at that airport, the overwhelming majority, would be going to these training and practice areas northwest and southwest, and they wouldn't be on flight following for that reason. If you see on the record, they provided a traffic advisor and safety alerts to pilots outside of Class Delta. I'm sorry. I want to give you a chance, though, to make me see the light. I just don't understand why they wouldn't have been on flight following if they know they're in a learning environment and they want to avoid a midair crash, and that's the best way to do it. Other than what I stated, I can tell you this much. Even if they were, assume for the moment, that they were on flight following, what is the first priority of air traffic controllers to separate aircraft and issue safety alerts as required by this order? And that action, which is most critical from a safety standpoint, is performed first. To sit there in Mr. Frazell's position and say, well, because they're not on flight following, they can go ahead and crash with each other if they would like. I mean, I don't think that's what happened. That's not the way this works because there are rules here. That's not what happened here. I think we all know that's not what happened, that he just said, let them crash. No, of course not. That's not what happened. And what happened here, it seems like to me, based on the factual findings of the district court, which we have to accept unless they're contrary to the laws of nature, pretty much, because we're on a clearly erroneous standard, is that the air traffic controller had a primary duty of scanning the runway for takeoffs and for incoming flights. And that was his primary duty. He did that here. After the pilot left the airspace, I mean, I'm not sure I'm seeing where the duty is coming from for him to have known when she specifically didn't ask for following that there was going to be an air crash there. His duty is not to look at the radar screens continuously. He looks at them, but that's not his primary duty. His primary duty is to keep the runways clear and keep the traffic that it's coming in and going out from crashing. That is the majority of his time is to be spent. You're correct. Looking at the runways and to see if they're in a taxiways aircraft on the pattern. However, that is not where he spends all of his time. Majority is more than 50 percent. It's not all of his time. And if you look at 3-1, let me look at, and I'll read that with you because it's important. Because he has to be using his TDW. If you look at 3-1-9, use of radar TDW displays. Controllers may use the certified power radar displays for the following purpose. Number one, to determine an aircraft's identification, exact location, or spatial relationship to other aircraft. That's got to be done with a TDW. To provide aircraft with radar traffic advisories. That has to be done with a TDW. To provide a direction or suggested heading to VFR aircraft as a method for radar identification or as an advisory aid to navigation. That has to be done with a TDW. Only one instance. To provide information and instruction to aircraft operating within the surface area for which the tower's responsibility. It's the only one that they don't have to use the TDW. You're saying they can use the TDW, but you would concede they don't have to constantly monitor it. So how are you getting to the point where the controller breached a duty by not constantly monitoring? We're not saying constantly monitoring, but let's think about it. Aren't you really? You're saying there is a responsibility to monitor it some of the time. Of course. So how do you get to the point where they should have been monitoring it some of the time while these two flights were, while the collision was developing? In fact, they were. He was. During the seven minutes and 39 seconds immediately before she takes off from Tamiami to just before the crash. At least 10 times he looked at his TDW and he used his TDW. The only thing he tells us is I didn't look at the entire TDW. I only looked at one end of it. This is a 14 inch screen. This is a 14 inch screen. He looked at it. In fact, he looked at it at the times when this developing midair collision was taking place. And he knew that this pilot was not on flight following because he knew that these students were not on flight following. He knew that. This is not a secret to any of the air traffic controllers. All right. Thank you very much. You have reserved four minutes, Mr. Montero. I have. And I thank you. All right. We'll hear next from Mr. Slauson. Good morning, Your Honor, and may it please the court. My name is Chip Slauson and I, along with co-counsel Brad Preamble, represent the United States in this morning's case. The district court's ruling was correct for several reasons, two of which I would like to focus on this morning. First, the local controller, Mr. Prezel, was not aware that these two accident aircraft were in dangerous proximity to each other in the minutes leading up to this collision. And second, Mr. Prezel had no reason to be aware of the fact that these aircraft were in dangerous proximity to each other for the collision. Mr. Prezel's lack of knowledge with respect to the unfolding collision is key to this case because, under the governing legal standards, liability can only touch when his conduct could foreseeably injure the plaintiffs, and that is not the case here. First, there is no dispute that Mr. Prezel was unaware of the inbound Cessna's presence until it made the incomplete transmission. At that point, with extremely limited time and information, he did everything within his power by issuing an alert about the impending collision only two seconds after he heard the inbound Cessna's call. Secondly, Mr. Prezel did a final check for traffic conflicts when the outbound Seneca crossed the five-mile ring. He did not see any traffic conflicts he needed to convey, and that was the last time he looked at the Seneca on the TDW. Secondly, the district court correctly found that Mr. Prezel had no reason to be aware of the impending collision. United States expert opinion evidence, backed by Mr. Prezel's testimony, was that his responsibility for the Seneca ended once it left his airspace, and therefore he had no reason to continue monitoring it in the subsequent minutes when the collision would have become apparent. And, Your Honor, at this point, I'd just like to address a couple of the questions that were raised with opposing counsel. First off, to Judge Brasher's first question, I believe. The plaintiffs have the burden here on both duty and on proximate calls. Regardless of the duty analysis, the district judge had ample evidence to conclude that because the follow theory did not work, there was no way to link Mr. Prezel's actions to the proximate calls of the crash once he refused to accept the idea that the Seneca was still operating under Mr. Prezel's follow instruction. Secondly, the purpose... Can I ask you a follow-up question on that? So, one of the questions I asked opposing counsel was how these issues that they're raising sort of work together. And it seems to me, I just want your thoughts on this, it seems to me that the district court's duty analysis and its proximate calls analysis are sort of the same thing. In other words, the district court says, well, there was no duty to monitor outside Class D airspace. Therefore, the only way they could have stopped this crash is if he would have seen it happening. And he did see it happening, but it was only a few seconds before, and therefore, he did all he could. You know what I mean? If there were a duty to monitor outside airspace, then wouldn't the proximate calls analysis be different? Not necessarily, Your Honor, because regardless of the duty to monitor, plaintiff's theory of proximate calls hinges on the fact that Mr. Prezel gave that follow instruction. And under their interpretation, they're trying to say that that follow instruction placed the Seneca on the collision course. But regardless of the duty, because the district judge discredited the follow theory and basically refused to accept it, you couldn't say that the actions of Mr. Prezel in issuing that instruction placed the Seneca on the collision course, which then caused the collision. And, Your Honor, just to draw your attention to the statement of purpose on the air traffic control handbook, the primary purpose of the air traffic control system is to prevent the collisions of aircraft operating within the system. As Judge Rosenbaum was alluding to earlier, these aircraft simply were not in the system. And we have ample evidence from Mr. Yonker and Mr. Prezel on the fact that the airplane, the Seneca, had left the Class Delta airspace and was no longer in two-way communications. These aircraft were simply not in the system. Let me ask you a question about the relevant duty that we're looking to in this case. And the appellant has pointed to the ATCM, and I know the government, in its brief, says that the ATCM is not dispositive of any duty analysis. But, you know, we're going to have to identify the duty that applies in this case. Can you just articulate what was the duty in this case for the air traffic controller? Yes, Your Honor. The duty would arise from state law, which Florida here gives us the undertaker's doctrine, which is simply judging whether or not the controller has done anything that would lead to detrimental reliance or increased risk of harm that caused damage. And these facts were sufficient for Judge Gales to find that neither of those two things were the case here and obviously look into the provisions of the handbook for guidance as well. What about looking? Opposing counsel has pointed out that the controller did, in fact, look at the radar screen and that by having looked at the screen, there was a duty that attached to that. I assume you disagree with that. Your Honor, if there was a duty, even if you assume that there was a duty that attached to that, the controller obviously is still bound by the common law concepts of reasonable care. Arguably, he would still have the duty to not do that negligently. But the last time he looked at the Seneca on his scope was when it passed that five-mile ring. At that point, he didn't see any conflicts he needed to alert the Seneca of, and that testimony was also backed by the United States expert opinion testimony. And, Judge Branch, just to address an earlier point you raised with opposing counsel, plaintiff's argument is especially problematic because there's no limiting principle under these particular facts. Mr. Frizzell had no reason to be aware that he had done Seneca, and he also was no longer in two-way communication with the outbound Seneca, and it was five miles outside of his airspace at that point. Imposing a duty here would simply be, under these facts, would simply be contrary to the customs and practices of how the air traffic control system works. And that was all evidence that was developed over the course of a very lengthy bench trial that was the subject of Judge Gale's factual findings. What about the fact that this airport seems to be an airport that has a good number of students? Is there any heightened duty that's going to apply to the air traffic controller, knowing that we have student pilots involved? Your Honor, I've not identified a particular source of heightened legal duty that would apply under the circumstances of an airport with many students, but as Judge Rosenbaum did allude to, this airspace where this collision occurred was Class E airspace, and that was basically under the jurisdiction of Miami Approach to provide that flight following service. And if the panel has no further questions, the United States would ask that this Court affirm the judgment of the district judge. Thank you. Thank you, Mr. Slauson. Mr. Montero, you have reserved four minutes. Let me quickly backtrack. Flight following is not required by any law, rule, or regulation. Let's start there. Number two, whether the use of flight following would be relevant to the issue. That would be relevant to the issue of comparative negligence, but not to duty. Well, yes and no, right? Because the issue is if there was flight following, then we would be expecting the air traffic controller to have a duty to be watching what's going on. But if there's not flight following, then the duties of the air traffic controller change. I mean, isn't that otherwise, right? Otherwise, let's say that the pilot flew out to Fort Lauderdale, okay, from Tamiami, and had a crash somewhere over Fort Lauderdale. I mean, would we still be expecting the air traffic controller to have been following this and seeing what was going on? Even within whatever the radius was of the screen. To answer your question, no, not to Fort Lauderdale, absolutely not. Let's not lose sight of the fact that these aircrafts were all headed to the training practice area. That's while they were going. And this crash occurs two minutes and 24 seconds after she passes the five-mile ring. That's the only time sequence here. And I know with the duty situation, we can't lose sight of the fact that we're talking duty. This air traffic controller has to abide by the rules that are self-imposed in the Order 7-1. There's no question that's right. And also Florida law. But the problem is, I don't understand how the fact that she chose not to fly with flight following doesn't affect what the duties of the air traffic controller are once she leaves the space, that five-mile radius. Why is that not the case? It's not the case because of the uniqueness of the airport that we're working with, Your Honor. This is, as you correctly stated, this is an airport where the overwhelming majority of traffic is generated by these aviation. Actually, I didn't say that. Oh, I'm sorry. That's all right. I apologize. But the overwhelming majority. What's your authority that the rules change when it's an educational airport? It's not a question of having authority that the rules change, but I can tell you this. Because you're saying there's a duty. So what's your authority? I would say the duty is based on the uniqueness of this airport being an educational airport. So then the question becomes, what is your authority for that? I look at the Gill case. Okay. In the Gill case, air traffic controllers may be liable under the Federal Tort Claims Act for negligent provision of services upon which the public has come to rely. These students have come to rely on this type of service outside of class, outside of the five-mile ring. Number two, the duty of care. Does that sentence mean on which the public relies in the specific case or on which the public relies generally as to what the duties of a flight controller would be when there's no flight following and the person is outside the space? Well, clearly, to answer your question, you have to look at the communication, the ongoing communication between air traffic controllers and the students at this particular airport. This was an ongoing communication where they were communicating with them outside of Class Delta. And more importantly, a returning aircraft to that airport had to communicate with air traffic control after they crossed the 10-mile ring. And why would they have to communicate with them after they crossed the 10-mile ring if they were not in Class Delta yet? Because this was the process. The process was you're coming from the northwest to southwest. You've got to get a hold of us and communicate with us when you're at the 10-mile ring. And that's what happened to the inbound aircraft. So if they're communicating with aircraft that are coming in after they cross a 10-mile ring, they clearly are in communication with aircraft that are going out. And interestingly, Your Honor, four instances after this crash, he communicated. He tried to communicate with these aircrafts. Unfortunately, he did it after the crash. All right. Thank you very much, Mr. Montero. I think we have your argument. Thank you.